CROWELL & MORING LLP
Kevin C. Mayer (CSB No. 118177)
Email: kmayer@crowell.com
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile: 415.986-2827

Andrew D. Kaplan (*Pro hac vice* application to be filed)
E-mail: akaplan@crowell.com
Rebecca B. Chaney (*Pro hac vice* application to be filed)
E-mail: rchaney@crowell.com
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116

*Attorneys for Defendant Cordis Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

THELMA LESCH, an individual; SANTOSH SINGH, an individual; GEORGE WITHROW, an individual; JUSTIN DAVID DEHART, individually and as successor in interest of SHANNON JEAN DEHART, Decedent; TIFFANY AUTUMN BEGLEY BROWN and SAMANTHA HOPE BEGLEY, individually and as successors in interest of MARK NEIL BEGLEY, Decedent; DAVID P RENTZ, JR., an individual; KIMBERLY L. PETERSON, an individual; JACQUELINE WHITAKER, an individual; PORTER HARRIS and DEBORAH HARRIS, individually and as husband and wife; GRACE WRIGHT, an individual,

Plaintiffs,

v.

CORDIS CORPORATION, a corporation; JOHNSON & JOHNSON, a corporation; CARDINAL HEALTH, INC., a corporation; CONFLUENT MEDICAL TECHNOLOGIES, INC., a corporation; and DOES 1 through 50,

Defendants.

Case No. ________________

**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446 and 1453 BY DEFENDANT CORDIS CORPORATION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Please take notice that defendant Cordis Corporation ("Cordis") hereby removes this action to federal court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453 with full reservation of any and all defenses and objections.

In support of this notice, Cordis respectfully submits as follows:

1. This action is one in a series of lawsuits originally filed in the Superior Court of the State of California for the County of Alameda, all alleging injuries resulting from the use of Cordis Inferior Vena Cava filters ("IVC filters" or "filters")—the TrapEase® Permanent Vena Cava Filter and the OptEase® Vena Cava Filter. The lawsuits are brought by more than 100 plaintiffs and subject to a proposal by plaintiffs' counsel to consolidate them all for the substantive purpose of being tried jointly, thereby triggering federal jurisdiction over this "mass action" pursuant to 28 U.S.C. § 1332(d)(11).

2. On April 20, 2016, plaintiffs Jerry Dunson, Joseph Gieber, Cheryl Grech, Robert Flanagan and Carol Flanagan filed a complaint ("Compl.") against Cordis Corporation and Does 1 through 100 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16812476 ("*Dunson*").

3. On May 24, 2016, plaintiffs in *Dunson* filed a First Amended Complaint ("FAC"), adding as plaintiffs Mary Eldeb, Dayna Currie and Harlowe Currie, and Confluent Medical Technologies as a defendant. Plaintiffs never served Cordis with the FAC.

4. On July 20, 2016, the Hon. Susan Illston issued an Order Granting In Part Cordis Corporation's Motion To Dismiss, dismissing various of the *Dunson* plaintiffs' claims. *Dunson* ECF. No. 26.

5. On August 5, 2016, the *Dunson* plaintiffs filed a Second Amended Complaint. *Dunson* ECF No. 34

6. On May 3, 2016, plaintiffs Heather Quinn, Brian Quinn, Kathrynn Kirby, Allison Brauer, Edward Brown, Patricia Brown, Michael Hickson, William Schenk, and Christina Jones filed a complaint against Cordis Corporation, Johnson & Johnson, and

Does 1 through 50 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16814166 ("*Quinn*").

7. On May 13, 2016, plaintiffs in *Quinn* filed an FAC, adding as plaintiffs Nancy Folz, Edward Chizek and Andrew Chapman. Plaintiffs' FAC does not assert claims against Johnson & Johnson.

8. On May 5, 2016, plaintiffs Walter Herbert, Russell Anderson, Martha Graham, Frank Graham, Tamarra Grayson, Timothy Howard, Ted Michael Martinez, Cynthia Martinez, Judy Shaffer and John Shaffer, Jr. filed a complaint against Cordis Corporation, Johnson & Johnson, and Does 1 through 50 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16814569 ("*Herbert*").

9. On May 13, 2016, plaintiffs in *Herbert* filed an FAC, adding as plaintiffs Clarice Stepp and Allison Fisher. Plaintiffs' FAC does not assert claims against Johnson & Johnson.

10. On May 6, 2016, plaintiffs Geanice Grant, Violet Elaine Kern, Russell Hopkins, Anthony Burbine, Courtney Comer, William Gouge, Rhonda Gail Schenk, Jennifer Allison, Bobby Fuller, Robert Edward Becker, Terry Ann Fountain, Marguerite Norton, James Franklin Williams, Sr., Betty Reed, Clint Hurtado, Mark Wehmeier, Jennifer Schock, and Jordan Deed filed a complaint against Cordis Corporation, Johnson & Johnson, and Does 1 through 50, in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16814688 ("*Grant*").

11. On May 13, 2016, plaintiffs in *Grant* filed an FAC, adding as plaintiffs Michelle Young and Victor Blair. Plaintiffs' FAC does not assert claims against Johnson & Johnson.

12. On May 6, 2016, plaintiffs David Resovsky, George Todd, David Brown and Gwen Kramer filed a complaint against Cordis Corporation and Does 1 through 100 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16814745 ("*Resovsky*").

13. On May 24, 2016, plaintiffs in *Resovksy* filed an FAC, adding as plaintiffs Richard Longston, Ronald Mareski, and Linda Mareski, and Confluent Medical Technologies as a defendant. Plaintiffs never served Cordis with the FAC.

14. On May 20, 2016, plaintiffs Michael Barber, Andrew Clos, Jacquelyn Hanson, Donald Hernandez, Sr., Rhonda Hernandez, James Lewis, Connie Patterson, Carolyn Simmons, Walter Simmons, Michael Donlin, David Hamilton, Stephen Vandall, Heather Vandall, Dorothy Mills, Lakisha Hooks, Deborah Jarvis, Caroline Carr, Geraldine Clark, Robert Spishak, Barbara Spishak, Reina Jones, Venesia Johnson, Darnell Kilgore, Joseph Hershberger, Russell Zukrigil and Brian Zukrigil filed a complaint against Cordis Corporation; Johnson & Johnson; Cardinal Health, Inc.; and Does 1 through 50 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16816487 ("*Barber*").

15. On June 3, 2016, plaintiffs in *Barber* filed an FAC, adding as plaintiff Frank Druse III, and Confluent Medical Technologies, Inc. as a defendant. Plaintiffs never properly served Cordis with the FAC.

16. On May 20, 2016, plaintiffs Lisa Oehring, Luther Leatham, Sonji Hutchinson, Sandra Sutter, Lynda Smith, Alan Goldberg, Benito Brown, Lupe Brown, Patricia Bunker, Carmen Burgess, Travis Burkhart, Kimberly Burkhart, Philip Faciana, Louise Hill, Keith Hunter, Ellen Juvera-Saiz, Brandi Kirk, Lisa Kumbier, Jessica Larimore, Herman Malone, Dorothy May, Dustin Merritt, Cindy Seymore, Freddie Wilson, Donald Holland, James McCord, Billy Richard, Melanie Richard, John Rogers, Sean Maguire, Laura Maguire, Gilda Southerland, Vincent Southerland, and Chad Southerland filed a complaint against Cordis Corporation; Johnson & Johnson; Cardinal Health, Inc.; and Does 1 through 50 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16816490 ("*Oehring*").

17. On June 3, 2016, plaintiffs in *Oehring* filed an FAC, adding Confluent Medical Technologies, Inc. as a defendant. Plaintiffs never properly served Cordis with the FAC.

18. On May 20, 2016, plaintiffs Wanda Holden, Tambra Shifflet, Lanora Barrett, Marcello Coogan, Willie P. Cook, John Dawson, Fredderick Hall, Thomas Husted, Sabrina Jackson, Juan Nelle Jeanes, Steven Johnson, Kendall McCoy, Michelle Montoya, Karen Neal, Debra Porter, Tommy Porter, Carl Rexing, Hazel Webb, Cheryl Wright, Evelyn Wright, and Thomas Yaudas filed a complaint against Cordis Corporation; Confluent Medical Technologies, Inc.; and Does 1 through 100 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16816600 ("*Holden*").[1]

19. Thereafter, on May 27, 2016, plaintiffs in *Quinn* filed a notice of motion and motion for consolidation of cases pursuant to California Code of Civil Procedure § 1048(a), seeking to consolidate the actions of *Dunson*, *Quinn*, *Herbert*, *Grant*, *Resovsky*, *Barber*, *Oehring*, and *Holden*, as well as "**any similar actions filed with this court or that may be filed with this court in the future**," such as the instant action. *Quinn* Notice of Motion and Motion for Consolidation of Cases ("Motion for Consolidation" or "Mot.") at 3-4 (attached hereto as Ex. A) (emphasis added). The motion in fact "anticipated that other Plaintiffs will file additional California state actions in Alameda County against the Defendants based on the same or similar legal theories," and noted that counsel in the eight identified cases "collectively have well over one hundred or more similar cases to prosecute, at this time." *Quinn* Memorandum of Points and Authorities in Support of Motion for Consolidation of Cases ("Consolidation Mem.") at 6 (attached hereto as Ex. A). *Lesch* is one such case. The motion defines the original eight and future-filed actions like this one as the "Related Actions." Mot. at 4. The motion seeks consolidation of these so-called Related Actions "for all pretrial purposes, including discovery and other proceedings, and the institution of a bellwether-trial process" to address common questions the motion identifies regarding

---

[1] Following removal of the mass action described herein, plaintiffs in *Holden* filed an FAC in federal court on June 28, 2016. *Holden, et al. v. Cordis Corp., et al.*, 3:16-cv-03087-TEH (ECF No. 14).

alleged product failure and defendants' knowledge thereof. *Id.* at 4, 7. It asserts that this process will serve to "avoid the risk of inconsistent adjudications," a danger the motion defines as "different results because **tried** before different judge and jury, etc." *Id.* at 7 (emphasis added). The motion further advocates that "[b]ellwether trials would likely prove to be an effective tool to **resolution** of the Cordis IVC filter cases." Consolidation Mem. at 8 (emphasis added).

20. The Memorandum of Points and Authorities in Support of the *Quinn* Motion for Consolidation represents that "[a]ll of the plaintiffs in the Related Actions, and their respective attorneys and counsel of record, support the consolidation sought in this motion." *Id.* at 1, 6 (Ex. A). The same plaintiffs' counsel who filed the *Quinn* Motion for Consolidation filed the instant action.

21. Plaintiffs initiated service of the *Quinn* Motion for Consolidation on May 27, 2016. Mot., Certificate of Service (Ex. A). Cordis received service of the Motion for Consolidation on June 1, 2016. (Ex. A).

22. On June 6, 2016, Cordis removed the *Dunson*, *Quinn*, *Resovsky*, *Grant*, *Herbert*, *Holden*, *Oehring*, and *Barber* actions to this Court, where they are currently pending and captioned as follows:

- *Dunson, et al. v. Cordis Corporation, et al.*, 3:16-cv-03076-EMC
- *Quinn, et al. v. Cordis Corporation, et al.*, 3:16-cv-03080-EMC
- *Resovsky, et al. v. Cordis Corporation, et al.*, 3 :16-cv-03082-EMC
- *Grant, et al. v. Cordis Corporation, et al.*, 3:16-cv-03083-EMC
- *Herbert, et al. v. Cordis Corporation, et al.*, 3:16-cv-03085-EMC
- *Holden, et al. v. Cordis Corporation, et al.*, 3:16-cv-03087-EMC
- *Oehring, et al. v. Cordis Corporation, et al.*, 3:16-cv-03088-EMC
- *Barber, et al. v. Cordis Corporation, et al.*, 3:16-cv-03086-EMC

23. On June 13, 2016, plaintiffs Leslie Elaine Sutton, Richard E. Harris, and Theresa Harris filed a complaint against Cordis Corporation; Johnson & Johnson; Cardinal Health, Inc.; Confluent Medical Technologies, Inc.; and Does 1 through 50 in the

Superior Court of the State of California for the County of Alameda, Civil Action No. RG16819338 ("*Sutton*").

24. On July 15, 2016, Cordis removed the *Sutton* action to this Court, where it is currently pending and captioned as *Sutton, et al. v. Cordis Corp., et al.*, 3:16-cv-04012-EMC.

25. On August 4, 2016, Judge Illston related the nine removed actions named above and ordered that all of those actions not already before her were to be reassigned to her. Related Case Order, No. 3:16-cv-03076-SI (ECF No. 32). Thereafter, on August 8, 2016, Judge Illston entered an Order of Recusal. *Id.* ECF No. 35. The nine cases were reassigned to Judge Edward M. Chen. *See, e.g.*, *id.* ECF No. 36.

26. On June 22, 2016, plaintiffs David Garry, Joann Judy, and Christopher Sims filed a complaint against Cordis Corporation and Does 1 through 50 in the Superior Court of the State of California for the County of Alameda, Civil Action No. AG16820893 ("*Garry*").

27. On August 4, 2016, Cordis removed the *Garry* action to this Court, where it is currently pending and captioned as *Garry, et al. v. Cordis Corporation, et al.*, 3:16-cv-04409-TEH. On August 10, the Hon. Thelton E. Henderson issued a Referral For Purposes Of Determining Relationship, "for consideration of whether the case is related to *Dunson*[.]" *Id.* ECF No. 10.[2] On August 12, 2016, Judge Chen issued a Related Case Order in *Garry*, *id.* ECF No. 11, and reassigned the action to himself.

28. On July 8, 2016, plaintiffs Thelma Lesch, Santosh Singh, George Withrow, Justin David Dehart, Tiffany Autumn Begley, Samantha Hope Begley, David P. Rentz, Jr., Kimberly L. Peterson, Jacqueline Whitaker, Porter Harris, Deborah Harris, and Grace Wright filed the instant action against Cordis Corporation; Johnson & Johnson; Cardinal Health, Inc.; Confluent Medical Technologies, Inc.; and Does 1 through 50 in

[2] Plaintiffs in *Quinn*, *Grant*, *Barber*, *Herbert*, *Oehring*, and *Sutton* have filed motions to remand their actions to the Alameda court. Plaintiffs in *Dunson*, *Resovsky*, *Holden*, and *Garry* have not done so. The *Dunson* and *Resovsky* courts issued orders to show cause concerning jurisdiction. Judge Chen invited the parties to submit further briefing on CAFA jurisdiction later this month. *E.g.*, 3:16-cv-03076-EMC, ECF No. 37. No rulings have been issued on this jurisdictional issue.

the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16822642 ("*Lesch*").

29. *Lesch* is a "similar action" to *Dunson*, *Quinn*, *Grant*, *Resovsky*, *Barber*, *Oehring*, *Herbert* and *Holden* as defined in the *Quinn* Motion to Consolidate because the *Lesch* plaintiffs' allegations are nearly identical to those in the complaints in the previously removed cases. Consolidation Mem. at 4 (requesting consolidation of "any similar actions filed with this court or that may be filed with this court in the future"). *Lesch* is therefore within the mass action currently comprised of the *Dunson*, *Quinn*, *Grant*, *Resovsky*, *Barber*, *Oehring*, *Holden*, *Sutton*, and *Garry* matters and is properly removed to this Court.

30. That this action was filed after the so-called "Related Actions" were proposed to be tried jointly has no bearing on whether it is included within this mass action. Because the *Quinn* Consolidation Motion proposed a joint trial of then-pending and future-filed cases, the joint trial proposal included the *Lesch* plaintiffs' claims. In fact, this same chronology applied to *Romo v. McKesson Corp.*, a case the Ninth Circuit considered to be part of a CAFA "mass action" initiated by a joint trial request that encompassed "such other cases that may be filed." No. 5:12-cv-02036, Notice of Removal ¶¶ 1, 4 (C.D. Cal. Nov. 20, 2012) (ECF No. 1); *Corber v. Xanodyne Pharms., Inc.*, 771 F.3d 1218, 1225 (9th Cir. 2014) (*en banc*). The *Romo* case was filed *after* plaintiffs in seven other actions had filed a motion to coordinate the cases, but the court still considered it properly part of the removed mass action, *Romo*, No. 5:12-cv-02036, Order at 5 n.1 (C.D. Cal. Feb. 20, 2013) (ECF No. 34), and the *en banc* Ninth Circuit did not disturb this ruling when holding that all of the cases were properly removed under CAFA, *Corber*, 771 F.3d 1225.

31. Removal is timely pursuant to 28 U.S.C. § 1446(b) because this Notice of Removal is being filed within thirty (30) days after receipt by Cordis of the *Lesch* plaintiffs' initial complaint. 28 U.S.C. § 1446(b)(1).

32. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings and orders

served upon Cordis in this matter are attached as Exhibit B.[3]

33. The Superior Court of the State of California for the County of Alameda is located within the Oakland Division of the United States District Court for the Northern District of California.

34. As shown below, this Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), *et seq.* ("CAFA"), in that this is a mass action in which monetary relief claims of more than 100 persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or facts; the parties are of at least minimally diverse citizenship; the aggregate amount in controversy exceeds $5,000,000; and at least one plaintiff puts more than $75,000 in controversy, exclusive of interest and costs.

35. By removing this mass action to this Court, Cordis does not admit any of the facts alleged in the complaint (or those in the Related Actions), or waive any defenses, objections, or motions available to it under state or federal law. Cordis reserves the right to challenge the adequacy and viability of the complaint (and those in the Related Actions) in all respects. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1395 (3d ed. 1998) ("A party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections.").

**THE COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005**

36. This action involves product liability claims arising from the alleged implantation of IVC filters into various individuals from various states across the country. Consolidation Mem. at 1 (Ex. A); *see also Lesch* Compl. ¶ 1. An IVC filter is a medical device that is placed surgically into the inferior vena cava "to 'catch' blood

[3] Cordis received plaintiffs' notice of complex determination hearing and case management conference by first-class mail on August 5, 2016, not via its registered agent, as the notice's proof of service suggests. Cordis has nonetheless included plaintiffs' notice of complex determination hearing and case management conference in Exhibit B.

clots that travel from the lower portions of the body to the heart and lungs." Consolidation Mem. at 1 (Ex. A); *see also Lesch* Compl. ¶ 43. Plaintiffs allege injuries arising from purported failure or defect of these IVC filters.

37. Removal of this action is authorized under CAFA. 28 U.S.C. §§ 1332(d) and 1453.

38. Under CAFA, a federal court has jurisdiction over a "mass action," defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i); where there is minimal diversity between the parties, *id*. § 1332(d)(2); where the amount in controversy exceeds an aggregate amount of $5 million, exclusive of interest and costs, *id*.; and where at least one plaintiff satisfies the $75,000 amount in controversy element, *see id*. § 1332(d)(11)(B)(i); *Freitas v. McKesson Corp.*, No. 12-5948 SC, 2013 WL 685200, at *2 (N.D. Cal. Feb. 25, 2013).

39. While a presumption against removal may pertain in some settings, it does not pertain to CAFA removal. The United States Supreme Court has resolved that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

**A. This Is A Mass Action For CAFA Purposes**

40. CAFA's mass action removal provision is triggered when the claims of 100 or more persons "are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i).

41. Here, when they were first removed, the so-called "Related Actions" consisted of eight cases with approximately 140 plaintiffs from various states across the country, of which "approximately 120 are personal injury plaintiffs, approximately 17 are loss of consortium plaintiffs, and three are wrongful death plaintiffs (for the same decedent." Consolidation Mem. at 6 (Ex. A). The later-filed *Sutton* and *Garry* actions added six more plaintiffs, including one loss of consortium plaintiff, to the mass action. *See*

*Sutton* Compl. ¶¶ 8-10; *Garry* Compl. at 2-3 ¶¶ 1-3. The instant action names an additional 11 plaintiffs, including one loss of consortium plaintiff and two wrongful death plaintiffs. *Lesch*, Compl. ¶¶ 8-20. Accordingly, the numeric element of CAFA's mass action rule is satisfied.

42. The *Quinn* Motion for Consolidation asserts that the so-called "Related Actions" present common questions of law and fact. *See* Consolidation Mem. at 6-8 (Ex. A). This element of CAFA removal is thus satisfied.

43. The motion also "proposes" a "joint trial" as CAFA requires. For CAFA removal purposes, the jurisdictional focus is on the "substance" of what is proposed. *See Corber*, 771 F.3d at 1225. Thus the request for a joint trial may be either explicit or implicit. *See id.*; *Allen v. Wilson*, No. CV 14-9686-JGB (AGRX), 2015 WL 846792, at *4 (C.D. Cal. Feb. 26, 2015).

44. The *Quinn* Motion for Consolidation seeks consolidation of the so-called Related Actions "for all pretrial purposes, including discovery and other proceedings, and the institution of a bellwether-trial process." Mot. at 4 (Ex. A).

45. The motion suggests that this "bellwether-trial process should be crafted and instated" to address common questions it identifies regarding alleged product failures and defendants' knowledge thereof. Consolidation Mem. at 9 (Ex. A).

46. It asserts that a "bellwether-trial process" is desirable, *inter alia*, "to avoid the risk of inconsistent adjudications." *Id.* at 1 (Ex. A). The motion states this goal repeatedly. *Id*. at 2, 7-8. Its rationale includes a desire to avoid "different results because *tried* before different judge and jury, etc.," *id.* at 7 (emphasis added), and to "avoid many of the same witnesses testifying on common issues in all actions," *id.* at 8.

47. On its face, the motion thus seeks much more than consolidation "solely for pretrial proceedings." *See* 28 U.S.C. 1332(d)(11)(B)(ii)(IV) (excluding from definition of mass action a civil action where "the claims have been consolidated or coordinated solely for pretrial proceedings"). Courts have found like consolidation proposals seeking to avoid the risk of inconsistency as tantamount to seeking a "joint trial" for

CAFA removal purposes. *See, e.g.*, *Corber*, 771 F.3d at 1223-24; *Allen*, 2015 WL 846792, at *3; *see also Atwell v. Boston Sci. Corp.*, 740 F.3d 1160, 1164-65 (8th Cir. 2013); *In re Abbott Labs., Inc.*, 698 F.3d 568, 573 (7th Cir. 2012).

48. The motion, moreover, contains no explicit limitation to consolidate for pre-trial purposes only. While the motion does indicate that the *Quinn* plaintiffs were "not requesting a consolidation of Related Actions for purposes of a single trial to determine the outcome for all plaintiffs," Consolidation Mem. at 7, this does nothing to distance plaintiffs from a CAFA mass action. CAFA does not require that plaintiffs seek a "single trial" to qualify as a "mass action." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("A proposal to hold multiple trials in a single suit (say, 72 plaintiffs at a time, or just one trial with 10 plaintiffs and the use of preclusion to cover everyone else) does not take the suit outside § 1332(d)(11)."). Such a constrained interpretation of "tried jointly" would render CAFA's mass action removal provision a nullity. *See, e.g.*, *id.*; *Atwell*, 740 F.3d at 1163 ("we conclude that construing the statute [CAFA] to require a single trial of more than 100 claims would render 28 U.S.C. § 1332(d)(11) 'defunct'"). In actual litigation, rarely if ever do one hundred or more plaintiffs show up for a single trial in a single setting (but for certified class actions, which are addressed by a separate CAFA provision). *In re Abbott Labs*, 698 F.3d 568 at 571 (quoting district court: in "the Court's experience, . . . so-called mass tort cases are never tried in their entirety and instead bellwether claims selected by the parties are tried individually" (internal quotation marks omitted)).

49. The plain meaning of the terms "tried" and "jointly" reinforce CAFA's application here. In construing statutory terms, courts of this Circuit "may consult dictionary definitions." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1088 (9th Cir. 2007) (citation omitted). Dictionaries do not define "trial" as rigidly as the consolidation motion seems to. The leading legal dictionary, for instance, defines "trial" to include "a formal judicial examination of evidence and determination of

claims in an adversary proceeding." Black's Law Dictionary (9th ed. 2009). Nor does "jointly" mean "single trial," or "unitary," or "all at one time." Instead, it can connote "in conjunction, combination, or concert." Oxford English Dictionary (Feb. 6, 2013); *see also* FreeDictionary, http://legal-dictionary.thefreedictionary.com/jointly (defining "joint" as, *inter alia*, "allied, amalgamated, associated, coalitional, collaborative").

50. "Jointly tried" describes a concept of trial relatedness: that is, a trial process with one trial relating to and influencing the outcome of others. *See, e.g.*, *Baker v. Fresenius USA, Inc.*, No. CV 14–9698–JGB (AGRx), 2015 WL 846854, at *3 (C.D. Cal. Feb. 26, 2015) ("Plaintiffs may not have agreed that the bellwether cases would be binding on other plaintiffs, but they cannot prevent the results of those trials from having preclusive effect on the other litigants."); *Allen*, 2015 WL 846792, at *3 (after bellwether trials, "'claim preclusion' as to the remaining plaintiffs can be enough to qualify the exemplar or bellwether trial as a joint trial" (citation omitted)); *Bullard*, 535 F.3d at 762 ("A trial of 10 exemplary plaintiffs, followed by application of issue or claim preclusion to 134 more plaintiffs without another trial," is a joint trial under CAFA.).

51. This is especially true where, as here, a request for consolidation is made under California's Section 1048(a) whose very terms contemplate a "joint trial or hearing." *See also Allen*, 2015 WL 846792, at *2. As compared to a motion for coordination, "[a] motion to consolidate pursuant to Section 1048 would certainly be even stronger evidence of a plaintiff's intent to propose a joint trial." *Id.* Such evidence of intent coupled with repeated requests for creation of a "bellwether-trial process" in order to avoid "inconsistent adjudications" and spare witnesses from testifying repeatedly satisfies the "tried jointly" element of CAFA mass action jurisdiction. *Id.*

52. Even if the attempt to qualify the consolidation request—as not seeking a "single" trial—were relevant under CAFA (and it is not), that lone statement cannot defeat CAFA jurisdiction by inconsistently disclaiming the motion's fundamental request for a joint trial. *See, e.g.*, *Atwell*, 740 F.3d at 1165 (finding CAFA jurisdiction where

"plaintiffs, while disavowing a desire to consolidate cases for trial, nonetheless urged the state court to assign the claims of more than 100 plaintiffs to a single judge who could 'handle these cases for consistency of rulings, judicial economy, [and] administration of justice'" (citation omitted)). The consolidation motion does not limit its request to pretrial proceedings only. It does not limit its request to achieving efficiency goals. And it proposes not merely a bellwether trial, but an entire "process" and "protocol" for bellwether trials. In like circumstances, courts look beyond rhetoric, focus on the substance of the request, and find the joint trial element satisfied. *Corber*, 771 F.3d at 1225; *Allen*, 2015 WL 846792, at *4; *see also Atwell*, 740 F.3d at 1166; *In re Abbott Labs.*, 698 F.3d at 573.[4]

53. Indeed, the reasons for coordination that the motion expresses mirror those set forth by the plaintiffs in *Corber*, a recent and analogous ruling from the *en banc* Ninth Circuit. In *Corber*, plaintiffs sought coordination in the California state system of more than 100 plaintiffs' claims, asserted in multiple and separate actions, to address "the same or substantially similar" causes of action and issues. 771 F.3d at 1220-22. The Court resolved that the purpose of avoiding inconsistent judgments and conflicting determinations of liability realistically "would be addressed only through some form of joint trial." *Id.* at 1223-24. Although the motion here insists that it is not seeking "a single trial," there is no meaningful separation between *Corber* and the present mass action.

54. Therefore, with their consolidation motion and brief, the *Quinn* plaintiffs have proposed to try jointly the monetary relief claims of 100 or more persons, including the *Lesch* plaintiffs' "later-filed" claims, triggering CAFA jurisdiction over this "mass action."

[4] Seeking bellwether trials is not inconsistent with a proposal to try cases jointly. "[A] joint trial can take different forms so long as the plaintiffs' claims are being determined jointly." *In re Abbott Labs*, 698 F.3d at 573.

**B. The Parties Are Minimally Diverse**

55. There is minimal diversity between Cordis and plaintiffs insofar as "at least one plaintiff is diverse in citizenship from any defendant." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

56. Defendant is informed and believes that plaintiff Kathrynn Kirby, a plaintiff in this mass action who is part of the *Quinn* action "at all times relevant to this action was and is a citizen and resident of the state of South Carolina." *Quinn* FAC ¶ 10.

57. Defendant Cordis is now, and was at the time plaintiffs filed the complaint, and at all intervening times, a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Ohio.[5]

58. As such, for the purposes of diversity jurisdiction, Cordis is a citizen and resident of the states of Florida and Ohio.

59. Accordingly, there is minimal diversity between Cordis and at least one plaintiff in this mass action, Kathrynn Kirby. *See* 28 U.S.C. § 1332(d)(2)(A) (the diversity requirement of CAFA is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant").

**C. The Amount In Controversy Requirement Is Met**

60. "[T]he general federal rule has long been to decide what the amount in controversy is from the complaint itself." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961).

61. When measuring the amount in controversy, a court assumes that the complaint's allegations are true and that a jury would return a verdict for plaintiff on all claims made in the complaint. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). If the complaint seeks both actual and punitive damages, each must

[5] The *Dunson*, *Resovsky*, and *Holden* complaints, as well as the *Quinn* Motion to Consolidate, erroneously allege that Cordis' principal place of business is in California. *See Dunson* Compl. ¶ 7; *Resovsky* Compl. ¶ 6; *Holden* Compl. ¶ 23; Consolidation Mem. at 2-3 (Ex. A). In any event, there are numerous plaintiffs in this mass action, including Plaintiff Kirby, who are citizens of states other than California, preserving minimal diversity. Further, under CAFA, "the case may be removed even if one or more defendants are citizens of the state in which the action was brought." *Ibarra*, 775 F.3d at 1195.

be considered "to the extent claimed" to determine the jurisdictional amount for diversity jurisdiction. *Campbell v. Bridgestone/Firestone, Inc.*, No. CIVF051499FVSDLB, 2006 WL 707291, at *1 (E.D. Cal. Mar. 17, 2006) (quoting *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943)). The "ultimate inquiry" is not what a defendant may actually owe, but what amount the plaintiff's complaint puts "in controversy." *Korn*, 536 F. Supp. 2d at 1205.

62. Under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554; *id*. at 553 (noting that, by design, § 1446(a) tracks general pleading requirements of Federal Rule of Civil Procedure 8(a)).

63. Here, it is apparent from the complaints in the Related Actions that plaintiffs seek an amount in controversy that exceeds $5 million in the aggregate, exclusive of costs and interest, and that at least one plaintiff's claim exceeds $75,000.

64. More than 155 plaintiffs seek to recover an array of damages, including general, special, and punitive damages, in strict products liability, negligence and fraud. Under CAFA, this Court considers whether the value of these claims in the aggregate exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6), (d)(11) ("In any [m]ass action, the claims of the individual [] members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs."). Further, removal under CAFA is proper for "mass action" suits if at least one plaintiff's claim exceeds $75,000. *See* 28 U.S.C. § 1332(d)(11)(B)(i); *Freitas*, 2013 WL 685200, at *2.

65. This mass action asserts the claims of more than 156 IVC filter recipients who seek to recover for extreme pain and suffering and other injuries, 22 claims for loss of consortium, and three claims for wrongful death.

66. More than one hundred and thirty seven plaintiffs allege that following implantation of their TrapEase® or OptEase® IVC filters, they may suffer or have suffered harm, such as "life-threatening injuries and damages[,] and require[d] extensive medical care

and treatment," or that they were subject to "significant medical expenses, extreme pain and suffering, loss of enjoyment of life, [and] disability," among other injuries. *See, e.g.*, *Sutton* Compl. ¶¶ 8-9; *Quinn* Am. Compl. ¶¶ 10-11; *Dunson* SAC Compl. ¶¶ 1-2, 6-7; *Grant* Am. Compl. ¶¶ 10-11; *Oehring* Compl. ¶¶ 16-17; *Holden* Am.Compl. ¶¶ 1-21; *Herbert* Am. Compl. ¶¶ 8-9; *Barber* Compl. ¶¶ 9-10; *Resovsk*y Compl. ¶¶ 1-2; *Lesch* ¶¶ 8-20; *see also Garry* ¶¶ 2-3 (alleging plaintiffs have "suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages"). They contend that their injuries have caused or will cause them to "continue to suffer significant medical expenses," "pain and suffering," and other damages. *See e.g.*, *id.* The representatives of a deceased individual implanted with an IVC filter similarly allege that the deceased suffered "fatal injuries, damages, and untimely death." *Oehring* Compl. ¶ 40; *Lesch* Compl. ¶¶ 12, 14. As a result, plaintiffs each seek to recover substantial damages, including general, special, and punitive damages.

67. Courts in comparable settings have found that claims and assertions like those plaintiffs allege here, including those of extreme or severe pain and past and future medical expenses, set forth an amount in controversy exceeding $75,000 for each plaintiff, exclusive of interest and costs. *See, e.g.*, *Campbell*, 2006 WL 707291, at *2 (apparent from the complaint that amount in controversy exceeded $75,000 where plaintiffs (1) asserted strict products liability, negligence, and breach of warranty claims against multiple defendants for "*severe*" injuries and (2) sought compensatory damages for wage loss, hospital and medical expenses, general damages, and loss of earning capacity) (emphasis added)); *Bryant v. Apotex, Inc.*, No. 1:12-CV-01377-LJO-JLT, 2012 WL 5933042, at *4 (E.D. Cal. Nov. 27, 2012) (finding amount in controversy was satisfied where plaintiff sought compensatory damages for injuries and "severe pain" lasting six months, *severe* emotional distress, and punitive damages arising out of administration of certain drugs in "crushed form") (emphasis added)); *McCoy by Webb v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002)

(noting that "courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount"); *Purdiman v. Organon Pharms. USA, Inc.*, No. 2:08-CV-0006-RWS, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) (concluding that the "amount of damages at issue in this action, including past medical bills, the cost of future medical treatment, pain and suffering, and lost wages, more likely than not exceed[ed] $75,000" where plaintiff alleged that she sustained "permanent and debilitating" injuries as a result of using defendants' birth control medical device, including "intense pain" and future medical testing, treatment, and monitoring for pulmonary embolisms).

68. Each of the IVC filter recipients here asserts an amount in controversy that exceeds $75,000, satisfying the requirement that at least one plaintiff's claim exceeds $75,000. As such, plaintiffs cumulatively seek well more than the requisite $5 million.

69. Beyond the damages alleged by supposed device recipients, an additional 22 plaintiffs in this mass action seek to recover loss of consortium damages—thereby enhancing the damages pleaded and underscoring that the claims here exceed the $5 million aggregate threshold. *See, e.g.*, *Gen. Motors Corp. v. Doupnik*, 1 F.3d 862, 864-65 (9th Cir. 1993) (assessing applicability of comparative fault to $1.6 million jury award for loss of consortium for a single plaintiff).

70. Plaintiffs' prayers for punitive damages make all the more undeniable plaintiffs' pleading of more than $5 million in controversy. *See Bell*, 320 U.S. at 240 (both actual and punitive damages are included in calculating the amount in controversy).

71. Although Cordis denies any liability to plaintiffs, their allegations of economic and non-economic loss, extreme pain and suffering, loss of consortium, wrongful death, and punitive damages plainly place more than $5 million in controversy, exclusive of interest and costs.

**D. All Other Prerequisites To Removal Are Met**

72. Pursuant to 28 U.S.C. § 1446(d), a copy of this notice is being served on plaintiffs, and filed with the clerk of court for this Court and with the clerk of the court for the Superior Court of the State of California for the County of Alameda.

73. Cordis reserves the right to amend or supplement this Notice of Removal.

**E. This Mass Action Is Properly Removed To This Court**

74. Because this is a mass action in which plaintiffs propose to try monetary relief claims of 100 or more persons jointly, there is minimal diversity of citizenship, the aggregate amount in controversy exceeds $5 million and at least one plaintiff's claim exceeds $75,000, this Court has original subject matter jurisdiction over plaintiffs' mass action, which includes the instant action.

75. Because subject matter jurisdiction exists under 28 U.S.C. § 1332(d), this action is removable pursuant to 28 U.S.C. § 1453, along with the ten other cases presently comprising this mass action.

WHEREFORE, Cordis hereby respectfully gives notice that the above action, formerly pending in the Superior Court of the State of California for the County of Alameda, is removed to the United States District Court for the Northern District of California.

August 12, 2016                          CROWELL & MORING LLP

                                         By: /s/ Kevin C. Mayer
                                         *Attorneys for Defendant Cordis Corporation*

**PROOF OF SERVICE**

I, Jennifer S. Tai, state:

My business address is 515 South Flower St., 40th Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to this action.

On the date set forth below, I served the foregoing document(s) described as:

**Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453 By Defendant Cordis Corporation**

on the following person(s) in this action:

Ramon Rossi Lopez,
Matthew Ramon Lopez
Amorina Patrice Lopez,
LOPEZ McHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
Telephone: (949) 737-1501
Facsimile: (949) 737-1504
rlopez@lopezmchugh.com
mlopez@lopezmchugh.com
**alopez@lopezmchugh.com**

**Attorneys for Plaintiffs**

☒ BY FIRST CLASS MAIL: I am employed in the City and County of Los Angeles where the mailing occurred. I enclosed the document(s) identified above in a sealed envelope or package addressed to the person(s) listed above, with postage fully paid. I placed the envelope or package for collection and mailing, following our ordinary business practice. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

☐ BY MESSENGER SERVICE: I served the document(s) identified above by

☐ BY ELECTRONIC MAIL: Based on a court order or an agreement of the parties to accept service by electronic mail, I caused the document(s) identified above to be transmitted electronically to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on August 12, 2016, at Los Angeles, California.

Jennifer S. Tai